FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

_____
                                         )
CARIBBEAN TELECOMMUNICATIONS             )
LIMITED,                                 )   Hon. Harold A. Ackerman
                                         )
            Plaintiff,                   )   Civil Action No. 07-5363 (HAA)
                                         )
v.                                       )   **OPINION AND ORDER**
                                         )
GUYANA TELEPHONE & TELEGRAPH             )
COMPANY LTD. and ATLANTIC                )
TELE-NETWORK INC.,                       )
                                         )
            Defendants.                  )
_____)

Gary S. Pasricha, Esq.
Clement C. Chang, Esq.
PASRICHA & PATEL, LLC
1794 Oak Tree Road
Edison, New Jersey 08820
*Attorneys for Plaintiff Caribbean Telecomunications Limited*

Joseph A. Boyle, Esq.
KELLEY DRYE & WARREN LLP
200 Kimball Drive
Parsippany, New Jersey 07054
*Attorneys for Defendants Guyana Telephone & Telegraph Company Ltd.
and Atlantic Tele-Network Inc.*

**ACKERMAN**, Senior District Judge:

This matter comes before the Court on motions (Doc. Nos. 8, 9) filed by Defendants Guyana Telephone & Telegraph Company Ltd. (GT&T) and Atlantic Tele-Network Inc. ("Atlantic") to dismiss the Complaint filed by Plaintiff Caribbean Telecommunications Limited ("Caribbean"). Both motions seek dismissal for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2), forum non conveniens under Rule 12(b)(3), and on the basis of

international comity. During the course of considering the parties' arguments, the Court detected a potential flaw in subject-matter jurisdiction. Cognizant of federal courts' absolute duty to verify dubious assertions of subject-matter jurisdiction, this Court requested supplemental briefing from the parties on the matter. *Cf.* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583 (1999) ("[S]ubject-matter delineations must be policed by the courts on their own initiative . . . .") (citation omitted).

Plaintiff bases the Court's subject-matter jurisdiction for this case on the federal diversity jurisdiction statute, 28 U.S.C. § 1332. The Court now considers *sua sponte* whether § 1332(a)(3) grants federal court jurisdiction where the sole Plaintiff is an alien corporation that has its principal place of business in the United States and one of the Defendants is also an alien corporation. After careful consideration of the statute's language, history, and purpose, the Court concludes that it lacks subject-matter jurisdiction to hear this case. Because severance of the non-diverse party cannot cure this jurisdictional defect, the Court must dismiss the present action.

### I.     BACKGROUND

This case involves breach of contract and tortious interference claims resulting from a telecommunications contract (the "interconnection agreement") between Caribbean and GT&T to provide cellular telephone service in the Co-operative Republic of Guyana. Caribbean and GT&T have disputed various obligations related to the interconnection agreement before the appropriate Guyanese administrative agencies and the Guyanese court system to no avail. However, because this Court now considers only the narrow question of subject-matter jurisdiction, it need not recount the facts of the parties' dispute; only the citizenship of the

parties matters.

According to the Complaint, Plaintiff is a telecommunications company incorporated in Guyana with a principal place of business in Edison, New Jersey; Defendant Atlantic is a Delaware corporation with principal offices in Massachusetts; and Defendant GT&T is a Guyana-based and chartered telecommunications corporation, 80 percent of which is owned by Atlantic.  Although GT&T and Atlantic ("Defendant Corporations") contest whether Plaintiff actually maintained a principal place of business in New Jersey, neither side disputes the geographic origins and principal places of business of Defendant Corporations.  For present purposes, the Court will presume without deciding that Plaintiff maintained a principal place of business in New Jersey.

Plaintiff asserts that this Court has jurisdiction under § 1332(a)(3) because the claims involve domestic parties of diverse citizenship, and the alien Defendant (GT&T) qualifies as an "additional" party.  Plaintiff's argument rests on the supposition that 28 U.S.C. § 1332(c)(1) endows it with the citizenship of its principal place of business—the State of New Jersey—for purposes of diversity jurisdiction.  According to Plaintiff's argument, then, this case involves claims between a New Jersey citizen on one side, and a "dual-citizen" of Delaware and Massachusetts, as well as an alien corporation, on the other side.  Conversely, Defendant Corporations maintain that the case involves alien corporations on both sides of the case, the lone domestic corporation (Atlantic) serving as the "additional party."  Federal jurisdictional statutes, they argue, do not permit such an alignment of parties.

II.     **STYLE NOTE**

To simplify the task of understanding the complex party alignments in this case and the

occasionally counterintuitive language of the diversity statute, this Court will employ the following stylistic conventions. First, the Court will use the terms "citizenship," "citizen," and "alien" as employed by the statute. Thus, the Court will speak of a corporation's "citizenship" because § 1332 uses that language. However, the statute does not use the term "alien" to describe a corporation chartered outside the jurisdiction of the United States. In fact, as the Court will explain further, the statute does not expressly address foreign corporations at all. Nevertheless, the Court will refer to foreign corporations as "alien corporations" because, as noted above, § 1332 uses the same term—"citizenship"— when referring to the eligibility of individuals and corporations for a federal forum, and § 1332(a) uses the term "alien" to describe a foreign individual. The Court's choice of language in this regard does not reflect a substantive decision on the meaning of any portion of § 1332.

Next, the Court finds it helpful to adopt the shorthand employed by Judge Debevoise in *K & H Business Consultants Ltd. v. Cheltonian, Ltd.*, 567 F. Supp. 420, 421–23 (D.N.J. 1983). Thus, where appropriate, the Court will use the letter "C" to denote the citizenship of domestic parties (including corporations), the letter "A" to refer to alien parties, and superscript numbers to signify diversity between citizen parties. Hence, the quintessential diversity jurisdiction case envisioned by § 1332(a)(1)—a suit between "citizens of different States"—has a party lineup of *$C^1$ v. $C^2$*. Applying this style to the present case, the parties dispute whether the party lineup is *$C^1$ v. ($C^2$ + A)*, as Plaintiff contends, or *A v. (A + C)*, as Defendant Corporations maintain. As the Court will explain below, the Court's assessment of the party lineup determines the outcome of the jurisdictional question.

### III. DIVERSITY JURISDICTION

Federal courts are courts of limited jurisdiction. *See, e.g.*, *Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 95 (1981). Congress has the constitutional authority, within the contours of Article III, to define the subject-matter jurisdiction for the lower federal courts. *See, e.g.*, *Palmore v. United States*, 411 U.S. 389, 400–401 (1973); *Cary v. Curtis*, 44 U.S. (3 How.) 236, 245 (1845). "It follows, then, that the [lower federal courts] must look to the statute as the warrant for their authority . . . ." *Cary*, 44 U.S. (3 How.) at 245; *see also Sheldon v. Sill*, 49 U.S. (8 How.) 441, 449 (1850) ("Courts created by statute can have no jurisdiction but such as the statute confers."). The subject-matter jurisdiction inquiry thus reduces to a question of power: "Has the Legislature empowered the court to hear cases of a certain genre?" *Wachovia Bank v. Schmidt*, 546 U.S. 303, 316 (2006) (citation omitted). This Court has no power to decide the parties' pending motions unless Congress has expressly conferred jurisdiction to hear the matter.

The jurisdictional question in this case raises two issues of first impression in this Circuit: (1) the effect of 28 U.S.C. § 1332(c)(1) on the jurisdictional citizenship of alien corporations, and (2) whether 28 U.S.C. § 1332(a)(3) grants jurisdiction where an alien corporation with a principal place of business in the United States sues an alien corporation and a domestic corporation of diverse citizenship. In order to properly assess the jurisdictional question, the Court must first determine the jurisdictional citizenship of the Plaintiff corporation. As with all matters of statutory interpretation, this Court must start with the plain language of the statutory provisions, "and if the statute is unambiguous, [the] inquiry begins and ends with the statutory text." *Pichler v. UNITE*, 542 F.3d 380, 398 (3d Cir. 2008) (citing *BedRoc Ltd., LLC v. United States*, 541 U.S.

5

176, 183 (2004)).

### A.  Plaintiff Corporation's Citizenship Under § 1332(c)(1)

Section 1332(c)(1) provides in pertinent part: "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business[.]"  Although the language of the corporate citizenship provision does not distinguish between foreign and domestic corporations, leading some to question its applicability to alien corporations, *see, e.g.*, *Eisenberg v. Commercial Union Assurance*, 189 F. Supp. 500, 502 (S.D.N.Y. 1960) (finding provision inapplicable), "the clear trend of authority" holds that the provision applies to alien corporations, *Danjaq, S.A. v. Pathe Commc'ns Corp.*, 979 F.2d 772, 774 (9th Cir. 1992); *see also JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88, 98 n.3 (2002) (acknowledging without deciding that "those Circuits that have reached the issue are in agreement that § 1332(c) extends to alien corporations").  The Third Circuit has not settled the matter,[1] but at least one court in this District has applied § 1332(c)(1) to alien corporations.  *Eyal Lior v. Sit*, 913 F. Supp. 868, 875 (D.N.J. 1996).  However, because both parties in this case concede that the corporate citizenship provision applies to alien corporations, the real question is not *whether* it applies, but *how* it applies to the parties in this case.  For present purposes, this Court will presume that § 1332(c)(1) applies to alien corporations.[2]

---

[1]However, in *DiRuggiero v. Rodgers*, a panel of the Third Circuit acknowledged in dicta that the corporate citizenship provision "caus[ed] incomplete diversity between citizens of a state and foreign corporations with principal place of business in the same state . . . ," thereby suggesting that the provision did apply to alien corporations.  743 F.2d 1009, 1018 n.17 (3d Cir. 1984).

[2]This Court would certainly lack subject-matter jurisdiction if § 1332(c)(1) does not apply to alien corporations.  Then, Plaintiff would have alien citizenship stemming from its incorporation in a foreign state, *Steamship Co. v. Tugman*, 106 U.S. 118, 121 (1882), and the party lineup

The parties dispute whether the corporate citizenship provision establishes the same "dual citizenship" for alien corporations that it does for domestic corporations. Plaintiff contends that it does not. Plaintiff asserts that the capitalization of the word "State" in § 1332(c)(1) demonstrates Congress's intent to differentiate between a "foreign state" and a "State" of the United States consistent with the usage of those terms elsewhere in the diversity statute. *Cf.* 28 U.S.C. § 1332(a). Naturally, an alien corporation does not have a State of incorporation within the United States. On the basis of this distinction, Plaintiff argues that the plain language of the corporate citizenship provision establishes a single jurisdictional citizenship for an alien corporation: the State in the United States wherein it maintains its principal place of business. An alien corporation simply would not have a *State* of incorporation under Plaintiff's reading.

As further support for its linguistic argument, Plaintiff notes the symmetry its "single citizenship" interpretation would provide with another portion of the diversity statute: § 1332(a)'s provision of a single citizenship, State of domicile, for permanent resident aliens. *Cf. Singh v. Daimler-Benz AG*, 9 F.3d 303, 312 (3d Cir. 1993). From this predicate, Plaintiff concludes that subject-matter jurisdiction would naturally extend to the present suit, because, under this reading, the party lineup would consist of a New Jersey citizen plaintiff adverse to a diverse corporate defendant and an additional alien party, $C^1$ v. $(C^2 + A)$. This lineup would satisfy § 1332(a)(3)'s grant of jurisdiction over cases between "citizens of different States and in which citizens or subjects of a foreign state are additional parties."

Alas, Plaintiff's "single citizenship" argument suffers from mixed signals and poor

---

would be *A v. (A + C)*. Under those circumstances, the suit would not involve "citizens of different States," and, thus, this Court would not have jurisdiction under § 1332(a)(3). *See, e.g.*, *K & H Bus. Consultants Ltd.*, 567 F. Supp. at 421–22 (collecting cases).

connections.  For starters, it is counterintuitive to suggest that the *plain language* of § 1332(c)(1) vests alien corporations with a single citizenship when the generic, two-citizenship provision fails to mention alien corporations.  Furthermore, courts have long endeavored to avoid statutory constructions that produce repeals by implication and absurd results.  *See Hamdan v. Rumsfeld*, 548 U.S. 557, 594 (2006) (citing *Ex parte Yerger*, 75 U.S. (8 Wall.) 85, 105 (1868) ("Repeals by implication are not favored.")); *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.").  Plaintiff's interpretation causes both.  For these reasons, the Court rejects Plaintiff's "single citizenship" theory for alien corporations.

First, Plaintiff's position completely disregards the century-old rule established by the Supreme Court in *Steamship Co. v. Tugman* that federal law treats alien corporations as citizens of the foreign state in which they were incorporated.  106 U.S. 118, 121 (1882).  Unless Congress has repealed the *Tugman* rule by statute, Plaintiff in this case, as a corporation chartered in a foreign country, would have alien citizenship.[3]  Unfortunately for Plaintiff, the legislative history of § 1332(c)(1) provides no indication that Congress intended to repeal *Tugman*.

When Congress amended the diversity statute in 1958 to adopt the corporate citizenship provision, it sought to eliminate a loophole that permitted otherwise local businesses to gain access to a federal forum by incorporating in another State.  S. Rep. No. 85-1830 (1958), *as*

---

[3]This Court presumes without deciding that the rule announced in *Tugman* does not have a constitutional basis and, therefore, can be repealed by statute in accordance with Congress's Article III authority to define the jurisdiction of the federal courts.  *Cf. Carden v. Arkoma Assocs.*, 494 U.S. 185, 188 (1990) (suggesting that the early corporate citizenship cases, such as *Tugman*, applied the diversity statute).

8

*reprinted in* 1958 U.S.C.C.A.N. 3099, 3101–02; *see also Danjaq, S.A. v. Pathe Commc'ns Corp.*, 979 F.2d 772, 773–74 (9th Cir. 1992); *Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553,1557–58 (11th Cir. 1989). Congress accomplished this purpose by giving corporations a second citizenship, effectively destroying diversity jurisdiction over local disputes occurring where corporations kept their principal places of business. *See, e.g.*, *Panalpina Welttransport GmBh v. Geosource, Inc.*, 764 F.2d 352, 354 (5th Cir. 1985) ("Through multiple places of incorporation [and the] principal place of business . . . doctrines, a corporation may become the citizen of several places for purposes of diversity jurisdiction. Such a result is in keeping with Congress' intendment to constrict the availability of diversity jurisdiction.") (citations omitted). But as this Court has already noted, the language of § 1332(c)(1) does not directly address alien corporations. Indeed, it appears that Congress never considered the impact of the amendment on alien corporations. *See, e.g.*, *Chick Kam Choo v. Exxon Corp.*, 764 F.2d 1148, 1152 & n.2 (5th Cir. 1985); James W. Moore and Donald T. Weckstein, *Corporations and Diversity of Citizenship Jurisdiction: A Supreme Court Fiction Revisited*, 77 Harv. L. Rev. 1426, 1435 (1964). Given this history, the Court does not see how Plaintiff construes Congressional silence to repeal *Tugman* and remove alien corporations' place-of-incorporation citizenship.

Furthermore, it is highly unusual that Plaintiff reads an implicit repeal into § 1332(c)(1) because the same statutory text implicitly codified the line of cases that provided the primary rationale for *Tugman*. *Tugman* descends from the 1844 case *Louisville, Cincinnati & Charleston R.R. Co. v. Letson*, where the Supreme Court broke with tradition by deciding to treat corporations as entities distinct from their shareholders for purposes of jurisdictional citizenship. 43 U.S. (2 How.) 497, 558 (1844). In the absence of clear constitutional or statutory guidance on

9

the matter, the *Letson* Court conceived of the corporation as a State-created entity "capable of being treated as a citizen of [the State which created it], as much as a natural person." *Id.* In the common law tradition, the *Tugman* Court merely applied the *Letson* rationale to alien corporations and the foreign sovereigns that created them. *Tugman*, 106 U.S. at 121. When Congress passed the corporate citizenship provision in 1958, it implicitly codified the *Letson* rule by including place-of-incorporation in the corporate citizenship definition. If Congress had intended to simultaneously repeal *Tugman* as it codified *Letson*, both being long-standing rules of corporate citizenship, Congress would have done so in a more conspicuous manner.[4]

Second, Plaintiff's approach both creates and destroys diversity jurisdiction in a manner not contemplated by Congress. On the one hand, because Plaintiff's interpretation understands the secondary citizenship conferred by § 1332(c)(1)—the "State where it has its principal place of business"—to be the sole citizenship for alien corporations, it expands diversity jurisdiction to include suits solely between alien entities *(A v. A)* where at least one of the corporate parties has a domestic principal place of business. Such a result is difficult to reconcile with Congress's intent, circa 1958, to "curb the abuses of the diversity statute" by carpetbagging corporations. *Danjaq*, 979 F.2d at 773–74; *see also Cabalceta*, 883 F.2d at 1557–58. Plaintiff's reading of the corporate citizenship clause thus creates an unusual paradox: domestic corporations cannot strategically incorporate in another State in order to litigate *local* disputes in federal court, but

---

[4]Indeed, the Supreme Court's unanimous endorsement of the *Tugman* rule in the 2002 case *JPMorgan Chase Bank*, more than forty years after Congress adopted the corporate citizenship provision, cuts against reading § 1332(c)(1) as a repeal. *JP Morgan Chase Bank*, 536 U.S. at 91. However, because that case raised a different interpretive question regarding whether a British territory qualified as a "foreign state" for purposes of diversity jurisdiction under § 1332(a)(2), *id.* at 90, and the Court expressly declined to consider whether § 1332(c)(1) applied to alien corporations, *id.* at 98 n.3, it is uncertain what effect, if any, that decision has on the present dispute.

alien corporations may strategically relocate in order to litigate *foreign* disputes in federal court?

On the other hand, Plaintiff's interpretation ostensibly would eliminate diversity jurisdiction over an entire class of alien corporate defendants that otherwise would satisfy the requirements of diversity. If, as Plaintiff suggests, § 1332(c)(1) has repealed *Tugman* such that alien corporations have *only* the citizenship of the *State* where they maintain their principal places of business, then the federal diversity statute would cease to recognize all alien corporations lacking domestic principal places of business, including Defendant GT&T, which has a principal place of business in Guyana according to the Complaint. Arguably, this complete lack of citizenship would be fatal to diversity jurisdiction under the rationale endorsed by the Supreme Court in *Newman-Green, Inc. v. Alfonzo-Larrain*, wherein the presence of a "stateless" party—there, a U.S. citizen not domiciled within the United States—destroyed the "complete diversity" required under both § 1332(a)(2) and (a)(3) of the diversity statute. 490 U.S. 826, 828–29 (1989). If a stateless party destroys diversity for purposes of jurisdiction, surely a citizenship-less business entity would too. Hence, even if Plaintiff prevails with the "single citizenship" argument, it forecloses suit against Defendant GT&T because the diversity statute does not countenance a party lineup of $C^1$ *v. ($C^2$ + [undefined])*. This result, while superficially consistent with Congress's goal of narrowing the scope of diversity jurisdiction, goes far beyond the evil, as well as the geographic scope, of the corporate forum-shopping problem that Congress faced in 1958.

The diversity statute's single-citizenship treatment of permanent resident aliens cannot answer for these patent absurdities. First, § 1332(a) differs from the corporate citizenship provision in that it expressly addresses alien entities. 28 U.S.C. § 1332(a) ("For purposes of this

11

section, . . . an *alien* admitted into the United States for permanent residence shall be deemed a citizen of the State in which such alien is domiciled.") (emphasis added). Furthermore, the plain language of § 1332(a) designates a single citizenship—State of domicile—that inherently differs from an alien's foreign citizenship. In the absence of qualifying language, the designation of a single, different citizenship implicitly displaces the alien's foreign citizenship for jurisdictional purposes. Section 1332(c)(1), by contrast, provides two citizenships, the first of which implicitly codifies the status quo ante of the *Letson* line of cases, and the second of which operates to supplement corporate citizenship in order to narrow diversity jurisdiction. The statutory design, history, and purpose of the corporate citizenship provision recounted by the Court above overcomes any negative implication, drawn from the capitalization of the word "State," that § 1332(c)(1) discards an alien corporation's jurisdictional foreign citizenship. These two provisions, § 1332(a) and § 1332(c)(1), simply address different matters in different ways.

Ultimately, this Court finds that Plaintiff's argument reads too much into the statute. Discrete occurrences of capitalization cannot be read to supplant a century-old understanding of corporate citizenship, thereby *expanding* diversity jurisdiction for alien corporations, when Congress intended the provision to supplement corporate citizenship to the *diminution* of diversity jurisdiction. If § 1332(c)(1) applies to alien corporations at all, it applies to them in the same manner that it applies to domestic corporations. At a minimum, Plaintiff has alien citizenship, and so does Defendant GT&T.

### B. Section 1332(a)(3)'s Diversity Requirement

Section 1332(a)(3) vests the federal district courts with original jurisdiction for claims exceeding $75,000 between "citizens of different States and in which citizens or subjects of a

foreign state are additional parties." 28 U.S.C. § 1332(a)(3).  In *Dresser Industries v. Underwriters at Lloyd's of London*, the Third Circuit held that § 1332(a)(3) abrogated the long-standing "complete diversity" requirement of *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806), such that alien parties could appear as "additional parties" on both sides of a controversy. *Dresser*, 106 F.3d 494, 498 (3d Cir. 1997).  All that § 1332(a)(3) required, according to the *Dresser* court, was diversity among the U.S. parties. *Id.* at 497.  Plaintiff contends that *Dresser* mandates a finding of jurisdiction here because this case involves diverse citizens and an additional alien party.  This Court disagrees.

      *Dresser* dealt with a distinctly different party lineup than the present case.  Whereas *Dresser* involved diverse U.S. parties and alien parties on both sides of the case, $(C^1 + A) \text{ v. } (C^2 + A + A \ldots)$, *id.* at 496, this case has an alien corporation on both sides of the dispute, with the sole American corporation joined as a defendant, $A \text{ v. } (A + C)$.  Here, Plaintiff asserts diversity of citizenship for purposes of § 1332(a)(3) on the basis of its New Jersey citizenship and Defendant Atlantic's Delaware/Massachusetts dual citizenship.  But Plaintiff's argument disregards its own alien citizenship, which this Court holds remains intact under § 1332(c)(1).  *Dresser* does not answer the question of whether a dual-citizen alien corporation satisfies the minimal diversity requirement of § 1332(a)(3).  This Court holds that it does not.

      The federal diversity statute does not permit domestic corporations to select among their two jurisdictional citizenships in order to preserve or defeat diversity.  Diversity must be satisfied by both corporate citizenship designations; otherwise, the corporate citizenship provision would accomplish nothing. *See, e.g.*, *Panalpina*, 764 F.2d at 354 ("A party cannot . . . pick and choose among the places of citizenship ignoring one or more in an effort to preserve diversity

13

jurisdiction.  Such a practice would be contrary to the historical intent of Congress.").  The Court sees no reason why alien corporations should be treated any differently.  The same plaintiff that today seeks to deploy its New Jersey citizenship to preserve diversity jurisdiction under § 1332(a)(3) with a party lineup of $C^1$ v. $(C^2 + A)$ could just as quickly assert its alien citizenship as a defendant to defeat diversity if tables were turned, $(C + A)$ v. $A$.  Cf. Dresser, 106 F.3d at 499 (noting that application of the *Strawbridge* "complete diversity" rule to § 1332(a)(2) cases "makes sense," because "[c]ases between aliens on one side and aliens and citizens on the other . . . do not fit the jurisdictional pigeonhole" of § 1332(a)(2)); *K & H Business Consultants Ltd.*, 567 F. Supp. at 421–22 (citing cases holding that the federal courts do not have jurisdiction over this sort of dispute).  Congress did not intend for corporate dual citizenship to be so pliable.  Dual citizenship is neither a sword nor a shield; it is not a magic jurisdiction key that both opens and closes the door to federal court depending on who holds the key.  *Cf. IGY Ocean Bay Props., Ltd. v. Ocean Bay Props. I Ltd.*, 534 F. Supp. 2d 446, 449 (S.D.N.Y. 2008) ("[T]he existence of subject matter jurisdiction does not and should not depend on the whims of either of the parties.").

At the present time, only the Second Circuit has answered this particular party-alignment question in the context of § 1332(a)(3).  The Second Circuit has held that "[e]ven if a corporation organized under the laws of a foreign nation maintains its principal place of business in a State, and is considered a citizen of that State, diversity i[s] nonetheless defeated if another alien party is present on the other side of the litigation."  *Franceskin v. Credit Suisse*, 214 F.3d 253, 258 (2d Cir. 2000) (quoting *Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 391 (2d Cir.), *cert. denied*, 493 U.S. 1003 (1989)); *see also IGY Ocean Bay Props.*, 534 F. Supp. 2d at 449.

The Second Circuit recognized in *Universal Licensing v. Paola del Lungo S.p.A.* that this diversity rule applies to alien corporations under both § 1332(a)(2) and (a)(3). 293 F.3d 579, 581 (2d Cir. 2002).

A handful of courts outside the Second Circuit have addressed the effect of an alien corporation's dual citizenship under § 1332(a)(2), which differs from § 1332(a)(3) in that it contemplates aliens as primary rather than additional parties. By relying on Congress's restrictive purpose for the corporate citizenship provision, most of these courts have found that federal courts do not have jurisdiction to hear a case between an alien corporation with a domestic principal place of business and another alien party. *See, e.g.*, *Chick Kam Choo*, 764 F.2d at 1151-53 (5th Cir. 1985); *Dewhurst v. Telenor Invest AS*, 83 F. Supp. 2d 577, 596 (D. Md. 2000); *Simon Holdings PLC Group of Cos. U.K. v. Klenz*, 878 F. Supp. 210, 212–13 (M.D. Fla. 1995); *Pancan Int'l Mgmt. Consultants, Inc. v. STS Microscan*, 848 F. Supp. 1321, 1325 (E.D. Mich. 1993); *Rouhi v. Harza Eng'g Co.*, 785 F. Supp. 1290, 1295 (N.D. Ill. 1992).

Plaintiff relies on a pair of earlier district court cases that came to the opposite conclusion, ostensibly under § 1332(a)(2) rather than § 1332(a)(3). *See Trans World Hosp. Supplies Ltd. v. Hosp. Corp. of Am.*, 542 F. Supp. 869, 878–79 (M.D. Tenn. 1982); *Bergen Shipping Co. v. Japan Marine Servs. Ltd.*, 386 F. Supp. 430, 433 (S.D.N.Y. 1974). Both of these courts recognized that Congress did not consider the applicability of § 1332(c)(1) to alien corporations, but nevertheless these courts adopted the "single citizenship" theory rejected by this Court today because they deemed the approach more consistent with Congress's policy of restricting federal court jurisdiction to cases where there was a possibility of state court bias in favor of local parties. *Trans World*, 542 F. Supp. at 877, 878–79; *Bergen*, 386 F. Supp. at 433,

434. As the *Trans World* court explained, there is no reason to expect state court bias against an alien corporation with a local principal place of business; rather, state court bias would more likely redound to the detriment of the wholly alien adverse party. *Trans World*, 542 F. Supp. at 878 n.8.

Although *Trans World* and *Bergen* put forth a plausible policy argument for extending jurisdiction to alien corporations with domestic principal places of business, this Court is not persuaded to find that Congress has already done so. While it may be true that some wholly alien corporations prefer federal forums to state courts for disputes against alien corporations with domestic principal places of business—but evidently not Defendant GT&T, who seeks dismissal in this case—such policy considerations belong with Congress and not the judiciary. This Court's jurisdiction depends upon *Congress's* explicit authorization, and where Congress has not spoken, this Court cannot speak for it. Indeed, so far as this Court can tell, no court has adopted the "single citizenship" line of reasoning since *Trans World*, and the Second Circuit has consistently rejected the holding of *Bergen* in subsequent cases. *See, e.g.*, *Franceskin*, 214 F.3d at 258; *Universal Licensing*, 293 F.3d at 581. For the above reasons, this Court joins the clear trend of authority and finds that Plaintiff's alien citizenship does not satisfy the minimal diversity requirement of § 1332(a)(3). Of the two Defendants, only GT&T as a non-diverse alien party spoils diversity. Consequently, this Court must dismiss GT&T from the suit for lack of subject-matter jurisdiction.

## IV.   DISMISSAL OF INDISPENSABLE PARTY

Having determined that Defendant GT&T destroys diversity, this Court must now determine whether GT&T is an indispensable party under Federal Rule of Civil Procedure 19

such that Plaintiff cannot maintain this suit against GT&T's parent corporation, Defendant Atlantic.  *See Publicker Indus. v. Roman Ceramics Corp.*, 603 F.2d 1065, 1069 (3d Cir. 1979).  It is well established that "a contracting party is the paradigm of an indispensable party" for contract claims.  *Rosenzweig v. Brunswick Corp.*, No. 08-807, 2008 WL 3895485, at *6 (D.N.J. Aug. 20, 2008); *Travelers Indem. Co. v. Household Int'l, Inc.*, 775 F. Supp. 518, 527 (D. Conn. 1991).  In this case, not only was GT&T a contracting party to the interconnection agreement that serves as the basis for all of Plaintiff's claims, but the Complaint alleges that GT&T was the alter ego of Atlantic.  The Court does not see how Plaintiff can maintain its contract-based claims against a corporation that was not a party to the contract.  Furthermore, permitting this suit to continue would prejudice Atlantic in its defense against the alter ego theory of liability because it would not be able to join its subsidiary GT&T.  Plaintiff does not contest that GT&T is an indispensable party.  Accordingly, the Court finds that GT&T is indispensable and will dismiss this case in its entirety.

## V.     CONCLUSION & ORDER

For the aforementioned reasons, the Court hereby finds that it lacks subject-matter jurisdiction under 28 U.S.C. § 1332(a)(3) to hear this case.  Because Defendant GT&T is an indispensable party, it would be improvident for this Court to permit the continuance of this action against Defendant Atlantic alone.  It is hereby ORDERED that Plaintiff's Complaint is DISMISSED WITH PREJUDICE.  The Clerk of the Court shall mark this case CLOSED.

Dated: January 26, 2009
Newark, New Jersey

/s/ Harold A. Ackerman
U.S.D.J.